Filed 7/25/23  P. v. Rose CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E079937 |
| v. | (Super.Ct.No. BCR2537) |
| EDWARD H. ROSE, | OPINION |
| Plaintiff and Respondent. | |

APPEAL from the Superior Court of San Bernardino County.  Christopher S. Pallone, Judge.  Affirmed.

Laura Arnold, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Arlene A. Sevidal and Randall D. Einhorn, Deputy Attorney Generals, for Plaintiff and Respondent.

1

Defendant and appellant Edward Harrison Rose appeals from the trial court's order denying his petition for resentencing under Penal Code[1] section 1170.95 (now section 1172.6[2]).

## FACTUAL AND PROCEDURAL HISTORY

A.      PROCEDURAL HISTORY

On May 28, 1991, an amended felony complaint charged defendant and codefendant Edgar Scott Sultan (collectively, defendants) with the murder of Karen F. under section 187, subdivision (a), (count 1); and the attempted second degree robbery of Karen F. under sections 664 and 211 (count 2).  Seven other counts were alleged solely against Sultan.[3]  On April 18, 1991, defendant pled guilty to murder and attempted robbery.  Pursuant to the plea agreement, defendant agreed to testify as a witness for the prosecution in Sultan's proceedings, and the trial court sentenced defendant to 25 years to life in state prison.

On December 28, 2021, defendant filed a petition for resentencing under section 1172.6.  After the trial court appointed counsel and found that a prima facie showing had been made, the court issued an order to show case.

---

[1]  All further statutory references are to the Penal Code unless otherwise indicated.

[2]  While this appeal was pending, the Legislature amended and renumbered section 1170.95 as section 1172.6.  (Stats. 2022, ch. 58, § 10.)  We refer to section 1172.6 in this opinion, even though 1170.95 was the operative designation at the time of the underlying proceedings.

[3]  Sultan was tried separately; he is not a party to this appeal.

At the hearing on August 26, 2022, the trial court granted the prosecution's request to take judicial notice of the transcripts of the preliminary hearing and trial in Sultan's case, in addition to the court file in defendant's case.[4] After reviewing the transcripts, court files, and hearing argument, the court took the matter under submission. On September 30, 2022, the court denied defendant's section 1172.6 petition, and issued a nine-page written decision.

On October 6, 2022, defendant filed a timely notice of appeal from the denial of his petition.

B.      FACTUAL HISTORY

On July 31, 1988, defendants stole a car in Snowflake, Arizona.  They drove to California to join another friend to sell drugs.  Defendants decided to commit robberies to obtain funds for their trip.  After stealing the car, they committed a "gas run," filling up the gas tank without paying.

Later that day, defendants arrived at a Circle K store in Apache Junction, Arizona. They parked the car and planned to rob the store.  They watched the store for several hours until there were no other people around.  Sultan entered the store with a firearm in his waistband.  Defendant waited in the car with the engine running, acting as the lookout and getaway driver.  Defendant had previously seen Sultan's firearm on him.  Prior to the robbery, the two of them discussed what weapons would be used.

---

[4] The transcripts from Sultan's case have been submitted to this court on a CD in Exhibit 1. Sultan's preliminary hearing reporter's transcript will be referred to as PH; the jury trial reporter's transcript referred to as JT; and the reporter's partial transcript testimony of defendant as "JTP."

Defendant testified that Sultan was not supposed to shoot anyone because "that's murder." However, while Sultan was inside the Circle K, defendant saw Sultan pull out his gun, then heard a gunshot. Sultan ran from the store yelling something. Sultan told defendant he shot the clerk, and "the guy dropped in one shot." Defendants drove off and continued driving to California.[5]

The following day, defendants arrived in Valencia, California, where they believed their friend was living. While defendants attempted to find their friend, they committed another "gas run." They never found their friend. Defendants knew they could not return to Arizona after committing the robbery in Apache Junction; they decided to go to Las Vegas, Nevada, to commit more robberies and/or burglaries.

At a stop enroute to Las Vegas, defendants drove to a shopping center in Ridgemont, California, to steal a purse from a shopper. As defendant drove by a woman, Sultan grabbed her purse.

Defendants continued to Trona, California. They discussed robbing the Pioneer Point Market. Like before, Sultan agreed to rob the store clerk while defendant acted as the lookout and getaway driver. Defendant agreed to honk the car horn if he saw a customer was coming.

August 3, 1988, early in the morning, defendants went to the Pioneer Point Market. Like the Circle K in Arizona, the two of them watched the store for some time until the store had no customers. Defendant cautioned Sultan not to shoot anyone and

---

[5] The clerk died.

Sultan responded that if the clerk had a gun, Sultan would shoot. Sultan, armed with a firearm, entered the market. After Sultan entered the store, a truck pulled up and defendant honked the car horn. As one of the truck's occupants was getting ready to exit, defendant heard gunshots. Defendant backed up the car and shined the headlights towards the truck. Defendant wanted to prevent the truck's passengers from seeing him or his license plate. The truck backed out and drove off. Sultan exited the store and got in the passenger side of the car.[6]

After returning to the car, Sultan complained that the rounds kept missing the clerk, later identified as Karen F., because the sight of the gun was off.[7] Defendant drove the two of them away from the scene.

After the Pioneer Point Market murder and robbery, defendant told Sultan that they needed to commit burglaries instead of robberies because they end up shooting people and not stealing much money.

Next, defendants drove to Stovepipe Wells, California. There, defendants burglarized a market before heading to Las Vegas. Once in Las Vegas, defendants obtained drugs and burglarized a delicatessen before ultimately being caught by law enforcement.

---

[6] At the preliminary hearing, defendant testified that Sultan told defendant to move over, and Sultan got in the driver's seat and drove.

[7] Karen F. had a gunshot wound in the back of her leg and in the back of her head. The leg wound was consistent with the victim running away from the shooter.

**DISCUSSION**

A.    THE TRIAL COURT'S FINDING THAT DEFENDANT WAS

INELIGIBLE FOR RELIEF UNDER SECTION 1172.6 IS SUPPORTED

BY SUBSTANTIAL EVIDENCE

On appeal, defendant contends that "substantial evidence did not support the trial court's order finding that appellant was ineligible for vacatur of his murder conviction under section 1172.6, and the order denying the petition must be reversed." For the reasons set forth *post*, we affirm the court's denial of defendant's petition.

1.    *LEGAL BACKGROUND*

"Effective January 1, 2019, the Legislature passed Senate Bill 1437 'to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.' [Citation.] . . . Senate Bill 1437 added section 1170.95, which provides a procedure for convicted murderers who could not be convicted under the law as amended to retroactively seek relief." (*People v. Lewis* (2021) 11 Cal.5th 952, 959 (*Lewis*).)

Pursuant to section 1170.95, an offender must file a petition in the sentencing court averring that: '(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine[;] [¶] (2) The petitioner was convicted of first degree or second degree murder following a trial or accepted a plea

offer in lieu of a trial at which the petitioner could be convicted for first degree or second degree murder[;] [¶] [and] (3) The petitioner could not be convicted of first or second degree murder because of changes to Section 188 or 189 made effective January 1, 2019.' " (*Lewis*, *supra*, 11 Cal.5th at pp. 959-960.)

"Where the petition complies with section 1170.95, subdivision (b)'s three requirements, then the court proceeds to subdivision (c) to assess whether the petitioner has made 'a prima facie showing' for relief. [Citation.] [¶] If the trial court determines that a prima facie showing for relief has been made, the trial court issues an order to show cause, and then must hold a hearing 'to determine whether to vacate the murder conviction and to recall the sentence and resentence the petitioner on any remaining counts.' The prosecutor and the petitioner may rely on the record of conviction or offer new or additional evidence to meet their respective burdens.' " (*Lewis*, *supra*, 11 Cal.5th at p. 960.) If, based upon this evidence, the trial court finds that the defendant was the actual killer, acted with the intent to kill, or was a major participant in the underlying felony who acted with reckless indifference to human life, then resentencing under section 1176.2 is unavailable. (*People v. Strong* (2022) 13 Cal.5th 698, 710.)

A trial court's determination that a petitioner is ineligible for section 1172.6 relief is reviewed for substantial evidence. (*People v. Clements* (2022) 75 Cal.App.5th 276, 298; *People v. Bascomb* (2020) 55 Cal.App.5th 1077, 1087.) Under that standard, appellate courts " 'review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the

7

appellant guilty beyond a reasonable doubt' " under section 188 as amended. (*People v. Morales* (2020) 10 Cal.5th 76, 88; *Clements*, at p. 298.) The reviewing court "presume[s] in support of the judgment the existence of every fact that the trier of fact could reasonably deduce from the evidence"; it does not reweigh the evidence. (*People v. Medina* (2009) 46 Cal.4th 913, 919.) An appellate court's "job is to determine whether there is any substantial evidence, contradicted or uncontradicted, to support a rational fact finder's findings beyond a reasonable doubt." (*Clements*, at p. 298, citing *People v. San Nicolas* (2004) 34 Cal.4th 614, 657-658.)

2. *THE COURT'S RULING IS SUPPORTED BY SUBSTANTIAL EVIDENCE*

In this case, we must determine whether defendant "was a major participant in the [murder] and acted with reckless indifference to human life. (*People v. Ramirez* (2021) 71 Cal.App.5th 970, 983-984 (*Ramirez*).)

a.      Major Participant

We first address whether substantial evidence supports that defendant was a major participant in the murder.

"To be a major participant, 'a defendant's personal involvement must be substantial, greater than the actions of *an ordinary aider and abettor* to an *ordinary felony murder . . . .*' 'The ultimate question pertaining to being a major participant is "whether the defendant's participation 'in criminal activities known to carry a grave risk of death' [citation] was sufficiently significant to be considered "major." ' " (*People v. Rodriguez* (2021) 66 Cal.App.5th 749, 768-769.) "[W]hat is required is that petitioner

8

was a major participant in a robbery known to carry a grave risk of death, not that he was a major participant in the murder." (*People v. Richardson* (2022) 79 Cal.App.5th 1085, 1092.) Factors to consider include: " 'What role did the defendant have in planning the criminal enterprise that led to one or more deaths? What role did the defendant have in supplying or using lethal weapons? What awareness did the defendant have of particular dangers posed by the nature of the crime, weapons used, or past experience or conduct of the other participants? Was the defendant present at the scene of the killing, in a position to facilitate or prevent the actual murder, and did his or her own actions or inaction play a particular role in the death? What did the defendant do after lethal force was used? *No one of these considerations is necessary*, nor is any one of them necessarily sufficient." (*Rodriguez*, at p. 769; see *People v. Banks* (2015) 61 Cal.4th 788, 803.)

In this case, the trial court found as follows:

"In reviewing the facts of this case, as contained in the various transcripts submitted to the Court by the People, the Court finds that defendant played a significant role in the planning of the criminal enterprise. Defendant discussed extensively with Mr. Sultan their goals once they reached their friend Rob in California, and their need to commit robberies to fund their trip.

"More seriously, however, is the defendant's awareness of the 'particular dangers posed by . . . past experiences or conduct of the other participants[.]' (*People v. Banks*, *supra*, 61 Cal.4th at p. 803.) Before Mr. Sultan committed the first murder in Apache Junction, Arizona, defendant was aware that his co-defendant had armed himself with a gun. Defendant discussed this with Mr. Sultan, and though approving of the gun being

9

used during the robberies to make the robberies go faster, defendant told Mr. Sultan not to shoot anyone. Unfortunately, Mr. Sultan did shoot and kill the Circle K clerk. Despite this [incident], defendant not only assisted Mr. Sultan in fleeing from the store, but they also continued their trip to California and their crime spree. Defendant did not abandon Mr. Sultan, attempt to disarm him, or notify law enforcement.

"Forewarned with this knowledge [that Sultan killed the clerk], defendant agreed to participate in the robbery of the Pioneer Point Market in Trona, California. Once again, defendant acted as lookout and getaway driver and allowed Mr. Sultan to enter the store, while armed, and commit the robbery. Unfortunately, once again, Mr. Sultan murdered the store clerk. Prior to the robbery in Trona, defendant was in a prime position to prevent Mr. Sultan from committing another murder, but he did nothing. To the contrary, defendant's own inaction contributed to the death of Karen F. After Mr. Sultan murdered the clerk, defendant drove them both away from the scene. Again, defendant willingly went with Mr. Sultan rather than notifying law enforcement. Indeed, defendant and Mr. Sultan drove to Stovepipe Wells and committed a burglary, and then headed to Las Vegas where they committed additional crimes until they were apprehended."

We agree with the trial court and, contrary to defendant's characterization of the evidence, we find that substantial evidence supports the court's finding.

Here, as provided in detail *ante*, there is more than substantial evidence that defendant was a major participant in the murder of Karen F. Just as the court stated, defendant plotted with Sultan to plan the robbery of the Pioneer Point Market, even after

10

the robbery of the Circle K ended with Sultan murdering the clerk. Moreover, Sultan told defendant that he would shoot the clerk if the clerk had a gun. On the day that Karen F. was murdered, both defendants watched the store to ensure no customers were in the store. After defendant saw Sultan enter the store with his gun, defendant acted as a lookout person. When defendant saw a truck approaching the store, he honked the car horn to warn Sultan. Defendant then shined his headlights towards the truck. When Sultan came out of the store, defendant drove the car away from the store.

Therefore, the evidence showed that defendant was a major participant in the robbery of the market, "known to carry a grave risk of death." (*Richardson*, *supra*, 79 Cal.App.5th at p. 1092.) In this case, after the Circle K robbery, the evidence showed that defendant and Sultan planned another robbery, even though defendant was aware that Sultan had a gun and used it to kill the clerk at the earlier robbery. Not only did defendant assist in planning the robbery of the Pioneer Point Market, he actively participated in the robbery by acting as the lookout and waiting in the car while Sultan was committing the robbery. Due to Sultan's murder of the clerk at the Circle K, defendant was fully aware of Sultan's prior conduct and ability to repeat what he had done. Moreover, after both robberies and murders, defendant did nothing to assist in the investigation of the murder. Instead, he went on to commit more crimes with Sultan. Substantial evidence supports the finding that defendant was a major participant in the underlying offense. Thus, we conclude that the trial court did not err in making this finding.

11

### b.     Reckless Indifference to Human Life

Next, we determine whether substantial evidence supports a finding that defendant acted with reckless indifference to human life.

"To determine whether a defendant acted with reckless indifference to human life, we 'look to whether a defendant has " 'knowingly engag[ed] in criminal activities known to carry a grave risk of death.' " [Citation.]' [Citation.] 'The defendant must be aware of and willingly involved in the violent manner in which a particular offense is committed, demonstrating reckless indifference to the significant risk of death his or her actions create.' " (*People v. Saibu* (2022) 81 Cal.App.5th 709, 739-740.) Factors to consider include (1) the defendant's knowledge and use of weapons, and the number of weapons used in the commission of the crime; (2) the defendant's physical presence at the crime scene such that he or she had opportunities to limit the crime or aid the victim; (3) the duration of the felony; (4) the defendant's knowledge of his or her coparticipants' likelihood of killing; and (5) whether defendant made any efforts to minimize the risk of violence. (*People v. Clark* (2016) 63 Cal.4th 522, 618-622 (*Clark*); *Saibu*, at p. 740.) There is "significant overlap" between the element of being a major participant and having reckless indifference to human life. (*In re Bennett* (2018) 26 Cal.App.5th 1002, 1015.) Hence, much of the same evidence leads us to conclude the trial court's finding that defendant acted with reckless indifference to human life is also supported by substantial evidence.

As we have already discussed, the evidence showed that defendant knew Sultan was in possession of a gun and he shot and killed the clerk at the Circle K. Moreover,

12

Sultan told defendant that he would shoot the clerk at the Pioneer Point Market if the clerk had a gun. Although defendant was clearly aware of Sultan's propensity to kill, defendant actively planned the Pioneer Point Market robbery with Sultan. Defendant never stated that he feared for his life if he were to stop participating in the crime spree with Sultan; never insisted that he would not participate in further crimes with Sultan; nor did he ask Sultan to refrain from using the gun at the robbery. Additionally, not only did defendant help plan the Pioneer Point Market robbery, he acted as the lookout—honking the car horn and shining the headlights when a truck came to the market. When defendant heard the gunshots coming from the market, he did not call the police or go into the market to offer assistance to the victim. Instead, he drove the getaway car to take himself and Sultan away from the crime scene.

Based on the above, we find substantial evidence supports the trial court's conclusion that defendant acted with reckless indifference to human life.

### c.     Consideration of Defendant's Youthfulness

Notwithstanding that substantial evidence supporting the trial court's findings, defendant contends that the trial court erred in failing to consider defendant's youthfulness at the time of the offense when determining whether defendant acted with "reckless indifference for human life."

Under established appellate rules, we presume the trial court considered defendant's age since the record does not affirmatively reflect otherwise; it is not necessary for the trial court to address each argument independently. (*People v. Evans* (1983) 141 Cal.App.3rd 1019, 1022.)

13

In this case, defendant's counsel argued that defendant's youth should be taken into account at the hearing on defendant's petition. At the beginning of her argument, defense counsel stated: "You have someone that's very young, in his early 20s, spontaneous decision to go to California with someone that he's known for a month or two." Thereafter, at the end of her argument, counsel again mentioned defendant's "youthful age." In light of defense counsel's argument requesting the court consider defendant's age, and in the absence of any evidence to the contrary, we presume the court considered defendant's age in denying defendant's petition.

In support of his contention, defendant cites *In re Moore* (2021) 68 Cal.App.5th 434 (*Moore*) and *People v. Ramirez* (2021) 71 Cal.App.5th 970, 990-991 (*Ramirez*). Defendant's reliance on both cases are misplaced.

In *Moore*, the appellate court vacated a felony-murder special circumstance involving a carjacking when it found insufficient evidence to establish that the defendant had acted with the requisite reckless indifference to human life. The court stated that although the defendant knew one of his cohorts had a gun, this awareness was insufficient to establish reckless indifference to human life. (*Moore*, *supra*, 68 Cal.App.5th at p. 452.) The court also noted that mere presence during the robbery was not enough to demonstrate reckless inference. (*Ibid.*) Additionally, the court observed that the defendant's decision to drive away with the shooter and other cohorts was insufficient to establish reckless indifference because there were people in the parking lot a the time of the shooting, and defendant could have reasonably assumed help would arrive quickly. (*Ibid.*) Moreover, the court stated that there was no evidence that the

14

defendant knew of past violent activities on the part of the shooter. (*Id.* at p. 453.) The court further found it significant that the defendant had been only 16 years old when the crime occurred. The court held that "a defendant's youth is a relevant factor in determining whether the defendant acted with reckless indifference to human life. "Indeed, the 'hallmark features' of youth—'among them, immaturity, impetuosity, and failure to appreciate risks and consequences'—are arguably more germane to a juvenile's mental state than to his or her conduct." (*Id.* at p. 453, quoting *Miller v. Alabama* (2012) 567 U.S. 460, 476, and citing *J.D. v. North Carolina* (2011) 564 U.S. 261, 272.)

The *Moore* court, therefore, held: "In this case, Moore, as a 16-year-old, lacked ' "the experience, perspective, and judgment" ' to adequately appreciate the risk of death posed by his criminal activities. (Citations.) To the extent the *Clark* factors discussed *ante* support a finding of reckless indifference for an adult—an issue we do not decide today—those factors undoubtedly preclude such a finding when viewed from the lens of Moore's youth. In particular, we cannot conclude beyond a reasonable doubt that Moore was subjectively aware that his actions created a graver risk of death than any other armed robbery." (*Moore*, *supra*, 68 Cal.App.5th at p. 454, fn. omitted.)

In *Ramirez*, *supra*, 71 Cal.App.5th 970, the defendant appealed from a postjudgment order denying his resentencing petition, "as to his conviction of first degree murder under a theory of felony murder based on his participation in an attempted carjacking." (*Id.* at p. 975.) The appellate court noted that the defendant did not expect legal force would be used and there was no evidence that the defendant was aware the shooter had a " 'propensity toward violence.' " (*Id.* at p. 988.) The court also found that

15

although the defendant did not want to participate in the carjacking, he feared being killed by the gang if he did not participate. (*Ibid.*) Moreover, the court stated that defendant's "youth at the time of the shooting greatly diminishes any inference he acted with reckless disregard for human life." (*Id.* at p. 990.) The defendant was 15 years old at the time of the crime. (*Id.* at p. 975.) The court noted that defendant's youth "may well have affected his calculation of the risk of death posed by using the firearm in the carjacking, as well as his willingness to abandon the crime," and found that the "evidence is not sufficient to prove 15-year-old Ramirez was 'subjectively aware that his actions created a graver risk of death' than any other armed carjacking." (*Ramirez*, *supra*, at p. 991, *Moore*, *supra*, 68 Cal.App.5th at p. 454.)

The facts in this case are readily distinguishable from the facts in both *Moore* and *Ramirez*. Here, as discussed in detail *ante*, defendant was an active participant who planned the crime sprees with Sultan, knew about Sultan's propensity to kill, and actively participated in the crimes. Moreover, there was no evidence of pressure being applied to defendant to participate in the crimes. Furthermore, unlike the defendants in *Moore* and *Ramirez* who were minors and only 16 and 15 years old, respectively, defendant was an adult and 20 years old when he committed the crimes. Based on the facts of this case, we cannot say that defendant, who was 20 years old, lacked " 'the experience, perspective, and judgment' " to adequately appreciate the risk of death posed by his criminal activities. To the contrary, defendant had the experience, perspective and judgment to appreciate the risk of death posed by the robberies. Neither *Moore* nor *Ramirez* help defendant's case.

16

In a related argument, defendant argues that because the trial court did not discuss defendant's age in its memorandum of decision, "there is no basis even for inferring that it was considered," the matter requires reversal under *People v. Jones* (2022) 86 Cal.App.5th 1076 (*Jones*).  *Jones* does not apply to this case.

In *Jones*, "[a]t the resentencing hearing, defense counsel told the court that Jones 'was barely 20 years old at the time of this crime,' 'immature' and 'still developing.' " Counsel asked the court to consider Jones's youth, referring the court to *Miller v. Alabama* (2012) 567 U.S. 460 [and] *Graham v. Florida* (2010) 560 U.S. 48 . . . for the proposition that 'recklessness is a hallmark of youth, but it does not alone demonstrate a reckless disregard for the value of human life.' " (*Jones*, *supra*, 86 Cal.App.5th at p. 1091.)  The appellate court noted that "[i]n providing a detailed explanation of its denial of the resentencing motion, however, the court did not mention Jones's age or maturity level." (*Ibid.*)

The appellate court stated it would presume that the trial court followed the law in exercising its duties and considered the evidence.  "In the usual case, the fact that a court did not specifically mention certain evidence does not mean that the court 'ignored' that evidence.  As Jones points out, however, it is unlikely in this particular instance that the trial court could have known to consider Jones's age and maturity level, particularly to the extent now required by cases issued *after* Jones's hearing.  (See *People v. Chambers* (1982) 136 Cal.App.3rd 444, 457 [presumption that the court follows the law does not apply where the sentencing law is not yet established].)"  (*Jones*, *supra*, 86 Cal.App.5th at p. 1092, italics and boldface added.)  The court, therefore, "in the interest of justice,"

17

found "it best for the trial court to have a meaningful opportunity to consider Jones's youth as part of the totality of the circumstances," and remanded the case "for the court to make this determination on the record consistent with prevailing law."  (*Ibid.*)

In contrast, in this case, the trial court made its ruling on the section 1172.6 petition after the cases relied upon by *Jones* were issued.  Therefore, the presumption that the court followed the law when making its ruling applies, and the rationale of *Jones* does not apply.

In sum, based on the above, we find that the trial court properly denied defendant's petition for resentencing.

## DISPOSITION

The order denying defendant's petition is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER
                  J.

We concur:

McKINSTER
       Acting P. J.

FIELDS
       J.